MoFabxaNd, J.,
delivered tbe opinion of tbie court:
Tbis is an action of ejectment, in which the plaintiffs below, ETaun and wife, recovered the land sued for,' 22 3-4 acres, and the defendant has appealed in error.
The first ground of error assigned is, that the court admitted as evidence, a deed from Frederick Shaffer to Thos. .Self, upon insufficient proof. The plaintiffs introduced a grant from the state t-o Frederick Shaffer, covering the land, and a regular chain of conveyances from Shaffer to themselves. A part of this chain is the deed from Shaffer to Thos. Self, above referred to.
The deed had never been proven or registered. It bears date of the 10th of September, 1841, more than thirty years before it -was offered in evidence. It was proven by the executors of Thos. Self, to whom the deed purported to have been made, that he received it from his father with his other papers, and gave it to the plaintiffs; that his'father bought the land from Shaffer; that Shaffer, the maker of the deed, removed to the State of Indiana, twenty-five or thirty years ago, and was then sixty-five or seventy years of age; that the two subscribing witnesses were dead; and he proves that their signatures are in their own genuine handwriting.
We think, upon this evidence, the deed was properly admitted as a common law paper.
The next objection is, that the circuit judge refused to instruct the jury that the plaintiffs had not shown a perfect legal title so as to enable them to recover in ejectment, because one of the deeds in their chain, the one above referred to, had never been registered; that the title held under an unregistered deed is an imperfect or inchoate legal title until registered, and will not be a sufficient title unless perfected by possession, or otherwise, to recover in ejectment. In this case the plaintiffs never had actual possession of the land. There are authorities holding this *125 proposition. The first-of our reg'istration acts, the act of 1715, ch. 38, sec. 5, in substance enacted that no- deed should he good or available in law unless registered in twelve months. By the act of 1806, ch. 49, sec. —,-it was enacted that the deed should take effect from the date of acknowledgment, when it was acknowledged by the maker. Again, the act of 1819, ch. 47, was passed, which, in substance, enacted that deeds might be registered at any time, but if after the expiration of twelve months, it would only take effect from the date of its registration.
Before the act of 1819, it was held that the deed, when registered, tvould relate to its date, and be superior to any intervening conveyance. Vinson v. Huddleston, Cooke, 254.
After the act of 1819, deeds registered under its provisions were held to take effect only from the registration; the acts of 1827 and 1831 were then passed. The result of these was, that as between the parties, deeds took effect without registration, and when registered, related, as between them, to the time of its execution, and prevails against all persons except .the creditors of the maker, ox purchasers without notice. Hays, lessee, v. McGuire et al., 8 Yerg., 92.
It is trae that in Rogers, lessee, v. Cawood, 1 Sw., 142, it is said that a party holding under an unregistered deed, has only an inchoate, and not a perfect legal title, and cannot, unless his title is otherwise made out, maintain ejectment. It is true this decision was made after the passage of the acts of 1827 and 1831, but they are not referred to, but the act of 1715 is referred to.
There are other authorities in substance under these statutes, bolding that the title, to be perfect, must be registered, although it may be registered after the suit is brought. Our Code, in bringing forward the [substance] of the acts of 1715, makes an important change in this, viz: That act was “no conveyance or bill of sale ... in whatever manner or form soever drawn, shall be good and available *126 in law unless registered,” etc. Sec. 2005, Code, enacts, that “no deed or conveyance of land, in wbat manner or form soever drawn, shall be good and available in law as to strangers, unless the same be acknowledged,” etc.; and sec. 2072, embodying the substance of the acts of 1831 and 1841--2, enacts that “all of said instruments” (referring to those .required to be registered), “shall have effect between the parties to the same, and their heirs and representatives, without registration, but as to other persons not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided.”
In Green v. Goodall and wife, 1 Cold., 404, the question is discussed and the authorities referred to by Judge Totten, in Rogers v. Oawood, all referred to1, and it was said that the earlier cases were not under the act of 1819; and it was also said that it had been uniformly held, under the acts of 1827 and 1831, as between the parties registration was not necessary; the deed took effect from its delivery. Even as to the bond in a court of equity, the deed was efficient upon its execution, and as to slaves and other personalty, whether in a court of law or equity, it operated without registration. It was further held that the act of 1827 applied as well to deeds made anterior to' its passage, as to those made in the’future, and so far repeals or modifies the act of 1819, as to restore the established law, making registration between the parties unnecessary, and enables the deed to retain its effects from its delivery, provided the rights of creditors, bona fide purchasers without notice, shall not be affected by the act or by the registration.
This, it is true, was a case of personal property, but under the present statutes, we no longer see any reason for the distinction, or any reason to hold the effect to be different in a court of law from a court of equity, 'but hold, simply, in the language of the statute, that as between the parties, their heirs and representatives, 'the deed is good and passes *127 the title without registration, saving the rights of strangers, creditors, and bona fide purchasers.
The deed being good between the par-ties and their privies, passes the title, unless there is some party affected by the want of registration; a party claiming an entirely different title is not so affected.
We hold that there is no error in this question.
It is next arg-ued that there was proof of an outstanding title that should have defeated the action. This was á deed of trust executed by Try, the vendor of the plaintiffs. This paper was introduced by the plaintiffs themselves, and had upon it an indorsement, indicating that the debt had been satisfied. This indorsement was not proven, but so far as appears, the indorsement was read without objection. This, with the fact of the plaintiff's possession of the deed, would authorize the jury to find that the debt had been paid. If so, this deed was not in the way of a recovery. See Carter v. Taylor, 3 Head, 30.
The next question is, whether J. K. Haun, one of the plaintiffs, was a competent witness. It is not denied .that he would have been a competent witness for himself, if the action was in his own name alone, but the action is brought by himself and wife, and the title is añade to them jointly. The question is, was he a competent witness for his wife? He was examined as to the boundaries, location and other facts relating to1 the title, but as to no fact derived from his wife, or as to any confidential communication. We have several times held that our recent statutes removing the disqualification of interest as to witnesses, do not remove all disqualifications of husband or wife when offered for or against each other. Their disqualification stands upon other and different grounds.
It was fully exemplified in a recent case before us at Jackson. The suit was by the wife, and involved a large amount; the transaction occurred in the presence of both husband and wife, and they were both witnesses, and their evidence was in direct and irreconcilable conflict. It is *128 manifest that tbis is inconsistent with, harmony in the marriage relation, and the policy of the law wisely excludes them. It is urged that there is a distinction as to the character of the evidence offered. We'do- mot say there may not be a, distinction as to the character of the evidence proposed to be introduced when the husband or wife is offered as a witness after the death of the other. We do not say how this is.
And it must also be admitted that the reasons for excluding the testimony of husband or wife to prove facts of the character proven in this case, are not as satisfactory as they are for excluding all evidence tending to disclose confidential communications between them; or of facts disclosing any part of the history of their married lives — -facts obtained by reason of the relation. So far as the disqualification of interest is concerned, this is removed by statute. The argument is then made with much force, that the only other object of the law is that there shall be no disclosure of confidential communications, or of facts obtained by reason of the relation, but as to facts like those proven in the present case, having no connection with the marriage relation, there, can be no reason for excluding the evidence. We are strongly impressed with this argument. But there are other reasons, perhaps, upon which this rule is founded, If they may be witnesses for each other, they may he against each other; and, even excluding -all evidence of a confidential character, still, to put the husband or wife in an attitude where they may he called to- testify for or against the interests of the other, even upon outside matters, would often lead to- discord and trouble in that relation.
And, again, to admit them as witnesses for certain purposes only, there would be great difficulty in laying down any rule, which, in practice, could be successfully applied in distinguishing between the evidence that should be admitted and such as should be excluded. Bor these reasons, we hold that the safer and better policy is to exclude them *129 absolutely, when offered for or against each other, except in those exceptional cases to which we need not refer. This we have held in unreported cases, as we have said. We are aware that other plausible answers might be made in this position, but are content to adhere to the rule adopted. For this error the judgment is reversed, and a new trial awarded.