Decided 30 June, 1902.

## ADVANCE THRESHER CO. *v.* ESTEB.

[69 Pac. 447.]

Constructive Notice of Unrecorded Deed.

1. A mortgage from a stranger to the record title is not constructive notice to an intending purchaser of a prior unrecorded deed; nor is the fact that the property is assessed to another than the record owner such notice.

Amendment by Implication—Attachment and Execution.

2. The 1899 amendment of Section 149 of Hill's Ann. Laws, relating to attachments (Laws, 1899, p. 231, § 1), repealed by implication so much of section 238, subd. 4, as directed the omission to file a certificate by the sheriff—for now an execution can be levied only by filing a certificate.

Certificate of Levy of Execution as Notice to Purchaser.

3. The filing and recording of a certificate of levy of execution against land as the property of one not a record owner, no record owner being a party to the action in which judgment was obtained, is not constructive notice to a purchaser from the record owner of a prior deed to the execution defendant, no one representing the grantee in the unrecorded deed being in possession.

Vendor and Purchaser—Effect of Quitclaim Deed.

4. A grantee in a bargain and sale deed may be a *bona fide* purchaser, as the form of the conveyance is immaterial.

Burden of Proof to Show Notice of Equitable Title.

5. A plaintiff in an action of ejectment, claiming under a deed unrecorded when defendants obtained the legal title, has the burden of showing that they had notice of his title.

Presumption When Part of Evidence is Brought Up.

6. Where the bill of exceptions does not purport to contain all the evidence, the appellate court will presume that the trial court acted correctly.

From Union: Robert Eakin, Judge.

This is an action by the Advance Thresher Company against Addie C. Esteb and husband to recover the possession of real property. It is alleged in the complaint that plaintiff is a private corporation, and the owner in fee and entitled to the imme-

diate possession of lot 4 in block 16 of Coggan's Addition to La Grande, Oregon, and that the defendants are wrongfully in possession thereof, to its damage in the sum of $50. The answer denies the allegations of the complaint, and avers that on August 14, 1900, Anna H. Davis and J. M. McShain, for a valuable consideration, conveyed the premises to the defendant Addie C. Esteb, who ever since has been, and now is, the owner in fee and entitled to the exclusive possession thereof. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a judgment for defendants, and plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief over the names of *C. H. Finn* and *F. S. Ivanhoe,* with an oral argument by *Mr. Finn.*

For respondent there was a brief over the names of *Eugene Ashwill, Jas. A: Fee* and *L. A. Esteb,* with an oral argument by *Mr. Ashwill* and *Mr. Fee.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

To render the exceptions hereinafter adverted to intelligible, it is deemed essential to state the uncontroverted facts as disclosd by the bill thereof. It appears therefrom that prior to June 1, 1897, Rose B. Huelat was the owner in fee of said lot, at which time, in consideration of $400, of which $352 was paid down, she and her husband executed and delivered a warranty deed of the premises to John McDowell, who thereupon took, and, with his son, George W. McDowell, held, possession thereof until the summer of 1899, when he died, without having recorded said deed, which could not thereafter be found. The plaintiff herein having commenced an action in the circuit court for Union County, Oregon, against John McDowell, secured a judgment therein June 16, 1897, which two days thereafter was entered in the judgment docket of said county. An execution having been issued on said judgment November 16, 1897, the certificate of the levy thereof on said lot was filed and recorded

in the office of the county clerk of that county the next day, and, the premises having been sold upon said execution, the plaintiff became the purchaser thereof, and, the sale having been confirmed, a sheriff's deed therefor was executed to it, January 22, 1901, and duly recorded February 28th of that year. Rose B. Huelat, December 11, 1899, in consideration of the payment of $48, the remainder due her on account of the original purchase, executed a bargain and sale deed of said lot to George W. McDowell, which was duly recorded two days thereafter. George W. McDowell, December 12, 1897, executed to Annie H. Davis and Gertrude R. Imus a bargain and sale deed to the premises, which was recorded February 1, 1900. Gertrude R. Imus and her husband, January 30, 1900, executed a bargain and sale deed to an undivided half of said lot to J. M. McShain, which deed was recorded February 1, 1900; and Annie H. Davis and her husband and J. M. McShain, August 14, 1900, executed to the defendant Addie C. Esteb a bargain and sale deed for said lot, in pursuance of which she took possession thereof, which deed was recorded August 17, 1900. The defendant L. A. Esteb, an attorney at law, testified that, acting as the agent of his wife, the defendant Addie C. Esteb, he examined the records of said county to ascertain the condition of the title to and the liens upon said lot at the time the deed was executed to her, and also to discover whether the title had ever been in George W. McDowell. The defendant Addie C. Esteb testified that she had no notice or knowledge of any unrecorded deed to John McDowell, or that he claimed the property, and that she paid therefor the sum of $1,000, partly by the legal fees of her husband, in part by a mortgage, and the remainder in money. The court having refused to permit plaintiff to prove that while John McDowell was in possession of the premises he executed a mortgage thereon, June 4, 1897, that he made out a statement for the assessor swearing that he was the owner of said lot, and that, having been assessed accordingly, he paid taxes thereon, exceptions were allowed.

The plaintiff requested the court to give the following instructions: "I instruct you that any one taking title to the property

in question subsequent to November 17, 1899, took such title with notice of plaintiff's lien and levy, and is bound by plaintiff's rights as creditor levying execution, and that from the date of levy the plaintiff was a purchaser of the property in question as to all third parties, or persons obtaining title from any source subsequent in time to said levy.  *Second,* I instruct you that the plaintiff in this case, at the date of its levy of execution, which was on November 16, 1899, obtained by such levy, by reason of its legal proceedings, all the right, title, and interest of said John McDowell in and to said real property; and if you find that said judgment debtor, John McDowell, had a legal title to said land, or ownership of the same, you must find for the plaintiff. *Third,* I instruct you that it makes no difference whether the said John McDowell had a deed recorded or not, at date of levy; yet if you find that he did have a deed at said time to said lot, or any title to the same, then I charge you that it was subsequent to execution under plaintiff's judgment, and you must find for plaintiff.  *Fourth,* I instruct you to find for the plaintiff, and assess damages as to the rental value of the premises according to the proof."   And also requested the court to submit to the jury the following verdict: "We, the jury in the above entitled action and court, find for the plaintiff, and that it is the owner and entitled to the possession of the real property described in the complaint, to wit, lot 4 in block 16, Coggan's Addition to La Grande, Union County, Oregon, and assess plaintiff's damages in the sum of $———."   The court, having refused to give either of the instructions, or to submit the verdict prepared, informed the jury that there was no question of fact in the case for them to decide; that it was a matter of law entirely; and took from them the testimony in the case, instructing them to find for the defendants, whereupon exceptions were allowed.

. 1. It is contended by plaintiff's counsel that the court erred in not permitting it to prove by the records of Union County that said lot was assessed in the name of John McDowell; that he made out a sworn statement of his assessable property, including said premises; and that he gave a mortgage thereon, which, having been duly recorded, remained uncanceled.  The

deed from Rose B. Huelat to John McDowell never having been recorded, his name does not appear as a grantee in the chain of title, to which, so far as the record is concerned, he is an absolute stranger.   John McDowell may have mortgaged the premises, but, if he did, a person searching the title would confine his examination to the direct or inverted indexes, and, having traced the chain from Rose B. Huelat to the defendant, he could not be charged with negligence because these exponents of the record failed to disclose such lien; and, while the indexes may be no part of the record, where they fail to note an instrument which has been properly recorded (*Board of Com'rs* v. *Babcock,* 5 Or. 472; *Nicklin* v. *Betts Spring Co.,* 11 Or. 406, 5 Pac. 51, 50 Am. Rep. 477), the rule thus announced can have no application to the case at bar, because John McDowell's deed was never recorded, and hence no necessity existed for a research beyond the chain disclosed by the indexes.   Thus, in *Sternberger* v. *Ragland,* 57 Ohio 148 (48 N. E. 811), it is held that a purchaser of real property from one who, of record, appears to have the title, is not required to examine for mortgages made to the vendor after he became the owner, nor is the record as to such a mortgage constructive notice of a prior unrecorded deed to the mortgagor. Mr. Justice WILLIAMS, speaking for the court, in deciding the case says: "The record of the mortgage executed by Ragland for the unpaid purchase money for the lot was not constructive notice of his unregistered deed to a subsequent purchaser from his grantor.   When a prospective purchaser finds a complete record title in the proposed seller, he is not bound to examine for mortgages made to the latter after he became the owner. Such a mortgage is not in the chain of his title, and is not, therefore, constructive notice to a subsequent purchaser of a prior unrecorded deed made by him to the mortgagor."   To the same effect, see *Sayward* v. *Thompson,* 11 Wash. 706 (40 Pac. 379) ; *Lumpkin* v. *Adams,* 74 Tex. 96 (11 S. W. 1072) ; *Peterson* v. *McCauley,* (Tex. Civ. App.) 25 S. W. 826; *Williams* v. *Slaughter,* (Tex. Civ. App.) 42 S. W. 327.   An intending purchaser of real property being under no obligation to examine the public records to ascertain the existence of mortgages given

by a stranger to the title, he, *a fortiori,* is not required to search the tax rolls of the county, to see if the property which he contemplates buying may not have been assessed to some one other than a grantee in the regular chain of title.

2. It is maintained that the court erred in refusing to give the first instruction requested, thereby holding that the sheriff's certificate of the levy of the execution upon the lot in question, filed in the office of the county clerk of Union County, November 17, 1899, did not impart notice to the defendants sufficient to cause them to make any inquiry respecting the plaintiff's claim to or prior rights in the property. It is argued that the levy of an execution upon real property is tantamount to an attachment thereof, which makes the plaintiff in the latter writ, as against third persons, a purchaser of the property in good faith and for a valuable consideration: Hill's Ann. Laws, §§ 150, 283, subd. 4. It will be remembered that Rose B. Huelat's deed to George W. McDowell was recorded December 13, 1899, or 26 days after the certificate of levy of the execution was filed in the clerk's office; and that Addie C. Esteb secured what title was thus attainable by mesne conveyances from him, and her deed was recorded August 17, 1900, while the sheriff's deed to the plaintiff of the premises was not recorded until February 28, 1901. The statute prescribing the mode of transferring the title to land is as follows: "Every conveyance of real property within this state heretofore made which shall not be recorded as provided in this title within five days thereafter shall be void against any subsequent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance shall be first duly recorded": Hill's Ann. Laws, § 3027. That Mrs. Esteb paid a valuable consideration does not appear to be controverted, and if she parted therewith, and secured the conveyance of the premises without notice of the prior unrecorded deed, her title must prevail: *Musgrove* v. *Bonser,* 5 Or. 313 (20 Am. Rep. 737). The character of the improvements upon the lot is not disclosed by the bill of exceptions, which also fails to show who, if any one, was in possession of the property from the time John McDowell died, in the summer of 1899,

until August 14, 1900, when Annie H. Davis and J. M. Mc-Shain, being in possession, surrendered the premises to Mrs. Esteb upon her purchase thereof. "Real property shall be attached as follows: The sheriff shall make a certificate containing the title of the cause, the names of the parties to the action, a description of such real property, and a statement that the same has been attached at the suit of the plaintiff; and deliver the same to the county clerk of the county in which the attached real estate is situated. * * Upon receiving the sheriff's certificate as provided in section 149 the county clerk to whom the same is delivered shall immediately file such certificate in his office, and record it in a book kept for that purpose. When such certificate is so filed for record, the lien in favor of the plaintiff shall immediately attach to the property described in the certificate. Whenever such lien shall be discharged, it shall be the duty of the county clerk to enter upon the margin of the page on which the certificate is recorded a minute of the discharge": Hill's Ann. Laws, §§ 149, 150, as amended by an act approved February 22, 1899 (Laws, 1899, p. 231). "When the writ of execution is against the property of the judgment debtor, it shall be executed by the sheriff as follows: * * (4) Property shall be levied on in like manner and with like effect as similar property is attached, as provided in sections 149, 150 and 152, omitting the filing of the certificate provided for in section 151": Hill's Ann. Laws, § 283. It would appear that the act of February 22, 1899 (Laws, 1899, p. 231), amending section 149 of our statute, respecting the mode of attaching real property, also repealed by implication so much of subdivision 4 of section 283, Hill's Ann. Laws, as relates to "omitting the filing of the certificate provided for in section 151." Prior to such amendment, real property was attached by leaving with the occupant thereof, or, if there be no occupant, in a conspicuous place thereon, a copy of the writ, certified by the sheriff, followed by filing a certificate thereof with the clerk within ten days: Hill's Ann. Laws, § 149, subd. 1, and section 151.

3. At the time Mrs. Esteb purchased the property neither the sheriff nor any person claiming the right under John

McDowell's unrecorded deed was in possession of the premises, and, Mrs. Esteb having testified that she had no knowledge of any adverse claim thereto, the certificate of the levy of the execution filed with the clerk affords the only notice chargeable to her, and the inquiry is whether this was sufficient to show that she was not a purchaser in good faith in consequence thereof. The levy of an execution on real property having the same effect as its attachment, the lien thus created is in the nature of, analogous to, and has the same effect upon the property involved as *lis pendens* in chancery : Bennett Lis Pendens, § 267. The property in controversy is of the character that renders it subject to the rule of *lis pendens,* and its description as given is adequate for that purpose; and the only remaining question is whether the filing and recording of the certificate of levy gave the court jurisdiction of the proper person, so as to affect a purchaser of the property from another source with the requisite notice: 13 Am. & Eng. Enc. Law (1 ed.), 877. If, at the time Mrs. Esteb purchased the property, Mrs. Huelat or the intervening grantees had been made parties, the *lis pendens* might have affected her; but their subsequent appearance, either voluntarily or otherwise, would be ineffectual, for those purchasers only are affected with notice who secure a title to property from parties to the suit: Wade, Notice, § 268; 13 Am. & Eng. Enc. Law (1 ed.), 882; Bennett, Lis Pendens, § 97; Devlin, Deeds, § 792; *Parks* v. *Jackson* (25 Am. Dec. 656.) ; *Buxton* v. *Sargent,* 7 N. D. 503 (75 N. W. 811). In searching the title to real property of which, as in the present instance, the grantors were in possession, it is necessary to examine the chain, as disclosed by the recorded conveyances, from the original source to the party in possession, including liens thereon created or suffered by each grantee in the chain while he held the title. Neither Mrs. Huelat nor any of her subsequent grantees by recorded title having been made parties to the action wherein this plaintiff secured judgment against John McDowell, the filing and recording of the certificate of levy did not secure jurisdiction of the proper person, so as to charge Mrs. Esteb with constructive notice of the levy upon the lot of which she

became the purchaser, and no error was committed in refusing to give the instruction so requested.

The second and third requests for instructions, having each a clause requiring the jury to find for the plaintiff, rendered them obnoxious, and no error was committed in refusing to give them, or to give the fourth request, or to submit the verdict so prepared.

4. It is contended that because the several deeds from Mrs. Huelat to Mrs. Esteb contained no covenants of warranty the latter had such knowledge of the condition of the title to the premises as to cause her to make inquiry concerning it, which, if prosecuted with reasonable diligence, would have disclosed the execution of the deed from Mrs. Huelat to John McDowell, of the judgment rendered against him, and of the levy of the execution on the real property; but that, not having availed herself of this information, she is chargeable with such notice as the search, if prosecuted, would have revealed. Whatever the rule may be in respect to notice of an outstanding equity, to be implied from a quitclaim deed taken by a grantee who is to be charged therewith, it is not pertinent to the inquiry, nor necessary to a decision herein, for, the conveyance under which Mrs. Esteb secured possession of the lot being a bargain and sale deed, this of itself does not prevent her from becoming a *bona fide* holder of the legal title: *Raymond* v. *Flavel,* 27 Or. 219 (40 Pac. 158).

5. It is maintained that the burden of proving that Mrs. Esteb was an innocent purchaser for a valuable consideration, and without notice, was imposed upon her, but, as she failed to comply with such rule, the court erred in rendering the judgment complained of. This is not a suit in equity to set aside an alleged fraudulent conveyance, in which there is imposed upon the grantee the duty of alleging, and in some instances the burden of showing, that he is an innocent purchaser for a valuable consideration, and without notice: *Weber* v. *Rothchild,* 15 Or. 385 (15 Pac. 650, 3 Am. St. Rep. 162) ; *Wood* v. *Rayburn,* 18 Or. 3 (22 Pac. 521) ; *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811) ; *Simpkins* v. *Windsor,* 21 Or. 382 (28 Pac. 72) ; *Jolly* v.

*Kyle,* 27 Or. 95 (39 Pac. 999) ; *Flynn* v. *Baisley,* 35 Or. 268 (57 Pac. 908, 45 L. R. A. 645, 76 Am. St. Rep. 495) ; *Mendenhall* v. *Elwert,* 36 Or. 375 (52 Pac. 22, 59 Pac. 805) ; *Wright* v. *Craig,* 40 Or. 191 (66 Pac. 807). This being an action at law to recover possession of real property, the defendants, observing the rule prescribed by statute (Hill's Ann. Laws, § 319), averred in their answer the nature and duration of their alleged estate in the premises, and offered proof thereof, which was all that was required of them. Thus, in *Peterson* v. *McCauley* (Tex. Civ. App.), 25 S. W. 826, Mr. Chief Justice LIGHTFOOT, answering a similar contention, says: "When the subsequent purchaser gets the legal title, and another party, holding an equitable title, seeks to oust him, the burden of proof rests on the holder of such equity to show that the subsequent purchaser had notice, actual or constructive, of his equitable title, or such facts as would put a prudent man on inquiry." See, also, to the same effect, *Hill* v. *Moore,* 62 Tex. 610; *Patty* v. *Middleton,* 82 Tex. 586 (17 S. W. 909).

6. It is maintained that the court erred in informing the jury that there was no fact in the case for them to decide; that it was a matter of law entirely; and also erred in taking from them the testimony, and in instructing them to find for the defendants. The bill of exceptions does not purport to contain all the testimony, in the absence of which the court may have correctly informed the jury that there was no issue of fact to decide, and, this being so, we cannot say that error was committed as alleged. It follows from these views that the judgment is affirmed. AFFIRMED.