## J. B. WILKINS *v.* M. C. McCORKLE *et al.*

### (*Jackson.* April Term, 1904.)

1. **LIS PENDENS.** One acquiring rights prior to a suit is not affected thereby, if not a party thereto, when.

The general rule is that one who acquires rights in property prior to the bringing of a suit in respect thereof is not affected by the proceedings in such suit, or the *lis pendens* thereof, unless he be made a party thereto. But this rule is materially narrowed in its application by the registration laws. (*Post,* p. 696.)

Cases cited and approved: Thomasson v. White, 6 Bax., 148; Fitzgerald v. Cummings, 1 Lea, 232, 239-240; Rodgers v. Dibrell, 6 Lea, 69, 76-77.

2. **REGISTRATION.** Instruments have effect between the parties without; but as to others only from noting for registration.

Instruments that are required to be registered have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons not having actual notice thereof, they have effect only from the noting thereof for registration on the books of the register. (*Post,* pp. 696, 702-705.)

Code cited and construed: Secs. 3749 and 3750 (S.); secs. 2887 and 2888 (M. & V.); secs. 2072 and 2073 (T. & S. and 1858).

Acts cited: 1819, ch. 47, sec. 2; 1827, ch. 59; 1831, ch. 90.

Cases cited and approved: Self v. Haun, 2 Tenn. Cases, 125-127, citing Vinson v. Huddleston, Cooke, 254; Hays v. McGuire, 8 Yer., 92.

Cases cited, approved and distinguished: Hays v. McGuire, 8 Yer., 92; Shields v. Mitchell, 10 Yer., 1; High v. Batte, 10 Yer., 337; Montgomery v. Hobson, Meigs, 454; Baldwin v. Baldwin,

Wilkins v. McCorkle.

2 Hum., 486; Hale v. Darter, 10 Hum., 96; Ward v. Daniel, 10 Hum., 607; Rogers v. Cawood, 1 Swan, 146; Wilkins v. May, 3 Head, 174; Green v. Goodall, 1 Cold., 413.

3. SAME. Instruments first registered or noted for registration have preference, unless claimant has notice of a prior instrument.

The instrument first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards, unless it is proved in a court of equity, according to the rules of said court, that the party claiming under the subsequent instrument had full notice of the previous instrument. (*Post*, p. 697.)

Code cited and construed: Sec. 3751 (S.); sec. 2889 (M. & V.); sec. 2074 (T. & S. and 1858).

4. SAME. All persons except creditors are affected by actual notice of unregistered instruments, when.

Instruments, without regard to registration, take effect and are equally good as to all persons who have actual notice of them from the date of such notice, except the conveyor's creditors, as to whom they are inoperative, ineffective, and practically nonexistent until they are noted for registration on the books of the register. (*Post*, p. 697.)

5. SAME. Purchasers are affected with actual notice; "bona fide purchasers" are purchasers without notice.

In the statutory provision unregistered instruments shall be null and void as to "*bona fide* purchasers from the makers without notice," the terms "*bona fide* purchasers" mean purchasers without notice, and no technical meaning is to be given to the terms. (*Post*, p. 698.)

Code cited and construed: Sec. 3752 (S.); sec. 2890 (M. & V.); sec. 2075 (T. & S. and 1858).

Cases cited and approved: Martin v. Lincoln, 4 Lea, 334, 349; Simpkinson v. McGee, 4 Lea, 432, 435-436.

112 Tenn—44

Wilkins v. McCorkle.

Cases cited, approved and distinguished:     Hale v. Darter, 10 Hum., 96; Ward v. Daniel, 10 Hum., 607.

6. **SAME.** Claimant under unregistered deed must show subsequent claimant took with notice.

The burden of proof rests upon one claiming under an unregistered conveyance to show that a subsequent claimant took with notice of the prior conveyance. (*Post, p.* 706.)

Cases cited and approved:   Gratz v. Land, etc., Imp. Co., 82 Fed., 381; Walter v. Brown, 115 Iowa, 360; Hooper v. DeVries, 115 Mich., 231; Hull v. Diehl, 21 Mont., 71; Paul v. Kerswell, 60 N. J. Law, 273; Association v. Knowles, 54 N. J. Eq., 519; Beman v. Douglas, 1 App. Div., 169, 37 N. Y. Sup., 859; Varwig v. Cleveland, etc., Co., 54 Ohio St., 455; Thresher Co. v. Esteb, 41 Or., 469.

7. **DECREES.** Divesting and vesting title to land are equivalent to deeds of conveyance.

A decree rendered for complainants under a bill filed for rescission of a deed of conveyance of land on the ground of fraud, setting aside the deed, and divesting the title out of the grantees and vesting it in the complainants, is in all respects equivalent to a deed of conveyance executed by the defendants to the complainants. (*Post, pp.* 705-706.)

Code cited and construed:   Sec. 6301 (S.); sec. 5234 (M. & V.); sec. 4484 (T. & S. and 1858).

Cases cited and approved:   Bleidorn v. Pilot Mountain Co., 89 Tenn., 166, 196; Behrn v. White, 108 Tenn., 392.

8. **SAME.** Same. Entered on the minute or record books need not be registered.

A decree divesting and vesting title to land entered upon the record books of the court of which it is rendered is sufficient and operative as a deed of conveyance without registration. (*Post, p.* 706.)

9. **SAME.** Grantee is bound by decree of rescission against his grantor rendered before the registration of his deed.

Where the grantee of a deed of conveyance fails to register it until after the rendition of a decree rescinding the deed to his grantor for the same land, he is privy to the litigation and the decree, of rescission and is bound by the result of the litigation, though he was not made a party to the suit; and his attack on the decree is that of a collateral attack. (*Post, pp.* 706-707.)

10. **SAME.** Same. Claimants under a grantee bound by decree of rescission against his grantor before registration are likewise bound by such decree.

Persons claiming under a grantee not registering his deed until after a decree rescinding the deed to his grantor for the same land stand upon no higher ground than such grantee under whom they claim in respect to a collateral attack upon the decree of rescission. (*Post, p.* 707.)

11. **SAME.** Collateral attack by parties or privies is confined to want of jurisdiction appearing in record.

Upon a collateral attack upon a judgment or decree of a court of general jurisdiction by parties or privies thereto, the rule is that such judgment or decree can not be questioned, except for want of authority over the matter adjudicated upon; and this want of authority must be found in record itself. (*Post, pp.* 707-708.)

12. **SAME.** Same. Conclusive presumption of jurisdiction on collateral attack, unless record discloses want of jurisdiction.

In the absence of anything in the record, where the decree collaterally attacked, to impeach the right of the court rendering such decree to determine the questions involved, there is a conclusive presumption that it had such right. (*Post, p.* 708.)

Case cited and approved: Reinhardt v. Nealis, 101 Tenn., 169, 172, 173.

**13. SAME.** Jurisdiction of person determined from record upon collateral attack.

Whether the court acquired jurisdiction of the persons appearing to be parties to a suit, where the decree rendered therein is collaterally attacked, must be determined from the face of the record. (*Post, p.* 708.)

**14. SAME.** Same. Presumption in favor of jurisdiction of the person upon collateral attack.

In the examination of the record of a suit, where the decree is collaterally attacked, to determine whether the court rendering the decree had jurisdiction of the persons appearing to be parties thereto, every reasonable presumption will be indulged in favor of the jurisdiction. (*Post, p.* 708.)

Cases cited and approved: Robertson v. Winchester, 85 Tenn., 171, 183-186; Hopper v. Fisher, 2 Head, 253, 254.

**15. SAME.** Same. Same. Evidence upon which decree was rendered cannot be examined on collateral attack, when.

Where a decree is collaterally attacked, the evidence on which the court acted in rendering the decree, can not be examined in determining whether the court had jurisdiction of persons appearing to be parties thereto. (*Post, p.* 708.)

**16. SAME.** Same. Same. Same. Case made in pleadings is sufficient upon collateral attack.

Where a case is made in the bill or other pleading, and the court in its judgment or decree assumes the case to have been established, that is sufficient upon a collateral attack. (*Post, p.* 708.)

Cases cited and approved: Kindell v. Titus, 9 Heis., 727; Pope v. Harrison, 16 Lea, 82.

**17. SAME.** Variation in corporate name of defendant is insufficient to show want of jurisdiction of person of defendant upon collateral attack, when; case in judgment.

Where the defendant is named in the bill by the corporate name of the "President, Directors, and Company of the Newcastle &

Wilkins v. McCorkle.

Danville Railroad;" in the nonresident publication notice as "The Newcastle and Danville Railroad Company;" in the order *pro confesso* as "The President and Directors of the Newcastle and Danville Railroad Company;" and in decree as the "Newcastle and Danville Railroad Company;" and title is divested out of it in that name, which name it commonly used, and in which name the conveyance of the land in question was made to it, while the charter name was "The President and Directors of the Newcastle and Danville Railroad Company," its usage of the shorter name of the "Newcastle and Danville Railroad Company," justified a suit against it in either name, and upon collateral attack on the decree, the variation between the corporate name as stated in the bill and decrees was insufficient to show that the court had no jurisdiction of the person of the defendant. (*Post, pp.* 708-710.)

18. SAME. Absence of oath to bill is insufficient to show want of jurisdiction of person of nonresident defendant upon collateral attack.

The affidavit of nonresidence of a defendant required to be made before the nonresidence notice is published may be made on a separate piece of paper, and need not be attached to the bill, and on collateral attack, it must be presumed that the proper affidavit was filed, although there appears to be no oath to the bill. (*Post, p.* 710.)

---

FROM PERRY.

---

Appeal from the Chancery Court of Perry County.— A. G. HAWKINS, Chancellor.

W. J. WEBSTER, J. A. SMISER, and JOHN F. MORRISON, for complainants.

A. W. STOCKELL, THOMAS CURTIN, and JAMES L. SLOAN, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

On the twenty-sixth of December, 1854, the State of Tennessee granted to Jno. L. Webb and J. W. Howard, by grant No. 23,685, a tract of 5,000 acres of land lying in Perry county. On the fourth of March, 1855, the said Webb and Howard conveyed the same land to the Newcastle & Danville Railroad Company. On the seventeenth of May, 1861, the railroad company conveyed this land to John B. Hamilton. On the twenty-eight of November, 1866, the latter conveyed to Looney & Wright against whom the vendor's lien was enforced, and at the sale, had on April 17, 1871, Isaac Milner became the purchaser, and he conveyed it again on the tenth of January, 1872, to John B. Hamilton. The latter was adjudicated a bankrupt on November 12, 1872, and the property was conveyed on January 7, 1873, to his assignee, pursuant to the bankruptcy laws then in force. On the third day of November, 1873, the assignee in bankruptcy sold the land, and John B. Hamilton again became the purchaser, and it was conveyed to him by the assignee. In 1887 John B. Hamilton died, having first made his will, which was probated during that year. John B. Wilkins, the complainant in the present cause, was one of the devisees, and in 1891 all of the other devisees conveyed to him their interest in the above-mentioned land, and in numerous other tracts to which they

claimed title, in consideration of an agreement on his part, in substance, to look up the titles, remove clouds, and sue for and recover the lands, and account to them for one-half of such lands. Wilkins accordingly brought the present bill to recover the above-mentioned 5,000 acres from the defendants, M. C. McCorkle and sons.

Their chief defense is based upon the following facts:

The deed which the Newcastle & Danville Railroad Company made to John B. Hamilton was not registered until January 16, 1867. In the meantime, on the seventh of April, 1866, John L. Webb and the heirs at law of J. W. Howard, he having died, filed their bill in the chancery court of Perry county, against the Newcastle & Danville Railroad Company, to obtain a rescission of the deed of the fourth of March, 1855, on the ground of fraud practiced upon them by the railroad company in procuring the said deed from them. On June 15, 1866, a decree was pronounced in that case adjudging that the deed referred to had been procured by fraud, and thereupon rescinding the sale, and divesting title out of the defendant thereto, the Newcastle & Danville Railroad Company, and vesting it in the complainants therein, John L. Webb and the Howard heirs.

Upon these facts it is insisted by the defendants that inasmuch as the deed which the Newcastle & Danville Railroad Company had made to John B. Hamilton on May 17, 1861, was not registered until after the above-mentioned suit was begun, and indeed not until after it

was ended, John B. Hamilton in his lifetime was, and those who claim under him now are bound by the results of that suit, under the law of *lis pendens,* and hence that the defendants, claiming through a series of intermediate deeds from Webb and Howard, have the better title. On the other hand, the complainant insists that inasmuch as John B. Hamilton was not a party to the suit referred to, and had obtained his deed before that suit was begun, neither he nor those claiming under him were or are bound by those proceedings, regardless of the fact of the nonregistration of the Hamilton deed. This is the first question to be determined.

The general rule is that one who acquires rights in property prior to the bringing of a suit in respect thereof is not affected by the proceedings in such suit, or the *lis pendens* thereof, unless he be made a party thereto. *Rodgers* v. *Dibrell,* 6 Lea, 69, 76-77; *Fitzgerald* v. *Cummings,* 1 Lea, 232, 239-240; *Thomasson* v. *White,* 6 Baxt., 148; 21 Am. and Eng. Encyc. Law, 648.

But this rule is materially narrowed in its application by the registration laws. Under our Code, while instruments that are required to be registered "have effect between the parties to the same, and their heirs and representatives, without registration," yet "as to other persons not having actual notice of them" they have effect "only from the noting thereof for registration on the books of the register." Shannon's Code, section 3749. When such instruments are registered, it is provided they "shall be notice to all the world from the time they

are noted for registration," and .they "shall take effect from said time." Id., section 3750. In case there are rival instruments, the instrument "first registered, or noted for registration, shall have preference over one of earlier date, but noted for registration afterwards, unless it is proven in a court of equity, according to the rules of said court, that the party claiming · under the subsequent instrument had full notice of the previous instrument." Id., section 3751. "Any of said instruments not so proved, or acknowledged, and registered, or noted for registration, shall be null and void as to existing and subsequent creditors of, or *bona fide* purchasers from, the makers, without notice." Id. section 3752.

It is perceived there are five leading propositions embraced in the foregoing sections: (1) That, as between the parties themselves and their heirs and representatives, such instruments take effect and are good without regard to registration; (2) that they also take effect and are equally good as to all persons who have actual notice of them from the date of such notice, except creditors; (3) that as to creditors (that is, of the vendor) they are inoperative, ineffective, and practically nonexistent until they are noted for registration on the books of the register; (4) that as to all other persons (that is, all not embraced in the preceding classes) they are equally inoperative, ineffective, and nonexistent until so noted for registration; (5) that upon being so "noted

for registration" they become at once "notice to all the world," and so effective as to all the world.

These propositions are really all embraced in sections 3749 and 3750, while the two following sections, 3751 and 3752, are but special applications of the two preceding sections, or of the principles contained in them; section 3751 applying them to the case of rival instruments, and section 3752 to the case of creditors and *bona fide* purchasers.

Some confusion has arisen from the use of the term *"bona fide* purchasers," by reason of the technical meaning of that expression as used, ordinarily, in courts of chancery; but this matter was considered and determined many years ago in the cases of *Simpkinson* v. *McGee*, 4 Lea, 432, 435-436, and *Martin* v. *Lincoln*, 4 Lea, 334, 349. In these cases it was held, in substance, that the term was not to be understood in the technical sense above referred to, but as the equivalent of "purchasers without notice." This construction harmonizes all of the sections, and we deem it the true one.

The general construction which we have above given of the sections of our registration law quoted is the substance of all of our decisions upon the subject. They are too numerous to justify us in even making out a tabulation or list of them here. Suffice it to say that we have re-examined them all.

We need refer specifically to only a few of them, cited in the brief of complainant's counsel.

It is insisted (1) that, "if the legal title be not perfect

in the vendee until registration, it does not remain in the vendor;" (2) that "upon registration the perfect and entire legal title, by relation and operation of law, vests in the vendee from the execution of the deed;" (3) that, "if it is never registered, it does not vest in the vendor." For these propositions the following cases are cited: *Shields* v. *Mitchell,* 10 Yerg., 1; *High* v. *Batte,* 10 Yerg., 337; *Montgomery* v. *Hobson,* Meigs, 454; *Baldwin* v. *Baldwin,* 2 Hum., 486; *Hale* v. *Darter,* 10 Hum., 96; *Ward* v. *Daniel,* 10 Hum., 607; *Rogers' Lessee* v. *Cawood,* 1 Swan, 146, 55 Am. Dec., 729; *Wilkins* v. *May,* 3 Head, 174; *Green* v. *Goodall,* 1 Cold., 413.

All of these propositions are quoted from language used by the court *arguendo,* in *Shields* v. *Mitchell,* and all of them are correct when understood in the sense in which the court used them in relation to the facts then under consideration. The question under discussion in *Shields* v. *Mitchell* was whether land held by unregistered deed was subject to execution for the debts of the vendee. This question was resolved in favor of the liability, and in announcing this result the court stated that while the title of the vendee was, for want of registration, not perfect, but only inchoate yet that the position of the vendor in respect hereof was such as is set forth in the three propositions quoted. *High* v. *Batte,* *Montgomery* v. *Hobson* and *Baldwin* v. *Baldwin* are in substantial accord. In *Hale* v. *Darter* and *Ward* v. *Daniel* the question was whether a deed executed before but registered after, the commencement of an action of

ejectment, could be read in evidence. In disposing of this question, the court said, in *Hale* v. *Darter*:

"The twelfth section of the act of 1831 (Laws 1831, p. 112, c. 90), which declares all such deeds and other instruments mentioned in the first section, and not proven and registered as required, null and void as to existing and subsequent creditors and *bona fide* purchasers without notice, leaves the relation of the parties to the deed unaffected by the neglect to register according to the provisions of the act.

"It has been held in North Carolina, and repeatedly in this State, that an unregistered deed conveys an inchoate legal title, which may at any time be made perfect by registration, and this by relation from the date of the deed. In the case of *Hays* v. *McGuire*, reported in 8 Yerg., 92, the plaintiff in deraigning his title offered in evidence a deed executed before the passage of the act of 1831, but registered afterwards, and after the commencement of the suit. In that case, it was held that the deed passed the title from the present date, as between the parties, and was admissible in evidence before the jury."

*Ward* v. *Daniel* is in accord. The question in *Rogers* v. *Cawood* was as to the admissibility in evidence in an ejectment suit of an unregistered deed. The court held such a deed inadmissible, and in disposing of the question said: "We are of opinion that a perfect legal title does not vest in the grantee or vendee until the deed be registered. It is true that a deed not registered has a

Wilkins v. McCorkle.

greater force and effect than a mere agreement to convey, because it vests in the vendee an equitable title, and more—an inchoate and imperfect legal title also.' The title is in its nature legal; but it is not a pure and perfect legal title until the deed be registered, because the deed has force and effect to convey the legal title under our own registry acts, and not under the statute of uses, or as a conveyance at the common law. Until, therefore, these acts be complied with by the registration of the deed, a perfect title does not pass to the purchaser." In *Wilkins* v. *May* (a later case) the court had before it a bill filed to protect a purchase of land, made under execution issued against one who held the land (one William Clark) by unregistered deed. In adjudging the matter the court said: "The weight of the evidence sufficiently establishes, in our judgment, that the land was purchased and paid for by William Clark some ten or twelve years prior to the execution sale, and that the same was in fact conveyed by the vendor, Hugh M. Clark, to William, about the time of the purchase. These facts being established, it matters not that the deed was omitted to be registered. As between the parties, registration of the deed was unimportant. The legal title passed from Hugh M. Clark by the execution of the deed; and though the deed was never registered, yet between him and his vendee the divestiture of title was as complete as if registration had taken place. In this view the case is a plain one for the relief sought by the bill." In *Green* v. *Goodall*, it appeared that the bill

was filed to quiet title to certain slaves held under an
unregistered deed, executed while Acts 1819, chapter
47, section 2, was in force, which act had been construed
by certain decisions of this court as making imperative
the registration of deeds, even between the parties.  In
passing upon the question so raised the court said:  "It
was uniformly held, prior to the act of 1819, and sub-
sequent thereto under Acts 1827, chapter 59, and Acts
1831, page 108, chapter 90, that as between the parties
registration was not necessary, and that the deed took
effect from its delivery.  Hays v. McGuire, 8 Yerg. 92.
Even as to land, in a court of equity the deed was ef-
ficacious upon its execution; and as to slaves and other
personalty, whether in a court of law or equity, it op-
erated without registration.  There was nothing, per-
haps, in the language of the act of 1819 that made it
necessary to hold that, as between the parties, registra-
tion was imperative, any more than in our other regis-
tration laws. . . .  But, this view aside, the act of
1827, above mentioned, relieves this deed of all difficulty
growing out of its nonregistration.  It applies to deeds
executed anterior to its passage, as well as to those to
be made in the future, and so far repeals or modifies the
act of 1819 as to restore the established law making reg-
istration between the parties unnecessary," etc.

The error, as we conceive, in  the position assumed
by counsel, is in giving a universal application to prop-
ositions which are good only in a particular aspect; that
is, in making them applicable as to all persons, when

Wilkins v. McCorkle.

they are true only as between the parties to the instruments referred to. That their proper use is so restricted is apparent from the excerpts we have taken from the authorities referred to. That all of the instruments required to be registered are good between the parties, without registration, is now without doubt. It is true that some misconception has arisen out of what has been said in the cases as to the title being "inchoate" prior to registration, and concerning the effect of registration in making the deed or other instrument "perfect . . . by relation from the date of the deed." Instruments that the law requires to be registered are said to be "inchoate" prior to registration, in that they are then good only between the parties and their privies, and persons having notice of them. Upon registration being had, or upon noting for registration, they are said to become "perfect," because they are then good as to all the world from that time. Really, the theory of "relation" adds nothing to the subject. Without it, the instruments referred to are good between the parties and their privies, and persons having notice from the date of their execution; and under it, or by virtue of it, intervening rights acquired by creditors or strangers or purchasers without notice cannot be displaced. We have no case, since the act of 1819 went into effect, holding that there could be such displacement, and to so hold now would result in the nullification of all of our registration laws. The true doctrine upon the subject, and the history of the question, are

thus stated in *Self* v. *Haun*, 2 Tenn. Cas., 125-127 : "Before the act of 1819 it was held that the deed, when registered, would relate to its date, and be superior to any intervening conveyance. *Vinson's Lessee* v. *Huddleston*, Cooke, 254. After the act of 1819 deeds registered under its provisions were held to take effect only from the registration. The acts of 1827 and 1831 were then passed. The result of these was that, as between the parties, deeds took effect without registration, and, when registered, related, as between them, to the time of its execution, and prevailed against all persons except the creditors of the maker or purchasers without notice. *Hays* v. *McGuire et al.*, 8 Yerg., 92. . . . We hold simply, in the language of the statute, that as between the parties, their heirs, and representatives, the deed is good, and passes the title without registration, saving the right of strangers, creditors, and *bona fide* purchasers."

Recurring, now, to the proposition that, as to creditors of the vendor and purchasers from him without notice, the deed or other instrument in question must be treated as nonexistent, which we have found to be true, it follows that as to such persons it cannot be properly said that the vendee has the title at all. Therefore, nothing whatever can be based upon that assumption. On the contrary, as to such persons, the case must always be treated as if the title still rested in the vendor.

The proposition, therefore, insisted upon by the com-

plainant's counsel, that no rights could be acquired under the chancery proceedings in the case of *James L. Webb et al.* v. *Newcastle & Danville Railroad Company,* because the railway company had already made its deed to Hamilton, is unsound; that deed remaining unregistered at the time the railway company was brought into court in the above-mentioned case. That is to say, the position so insisted upon by the complainant's counsel is unsound, if it be true that the complainants in that case could be treated, in conformity with law, as creditors of the railway company, or as purchasers without notice, from it.

We shall now briefly consider this question.

They were not creditors. This much is clear.

Were they purchasers? As already stated, they had filed a bill against the railway company for rescission on the ground of fraud, under which they obtained a decree setting aside the deed previously made by Webb and Howard to the railway company, and divesting title out of the railway company, and vesting it in the complainants themselves. That decree was in all respects equivalent to a deed executed by the railway company to the complainants. Shannon's Code, section 6301, reads: "The decree may divest the title to property, real or personal, out of any of the parties, and vest it in others, and such decree shall have all the force and effect of a conveyance by such parties, executed in due form of law." See, also, *Behrn* v. *White,* 108 Tenn.,

112 Tenn—45

392, 67 S. W., 810, and *Bleidorn* v. *Pilot Mountain Company,* 89 Tenn., 166, 196, 15 S. W., 737.

Such conveyances need not be recorded in the register's office, in order to be effective. Their entry upon the record books of the court in which they are rendered is sufficient, answering all the purposes of registration.

There is no testimony showing that the complainants in the case referred to had notice of the conveyance to John B. Hamilton. The burden of proof was upon the complainants in the present case to show such notice, if any existed. "By the weight of both reason and authority it is incumbent upon one claiming under an unrecorded conveyance to prove that the junior claimant took with notice of the prior conveyance." 24 Am. and Eng. Encyc. of Law (2 Ed.), p. 137, citing *Gratz* v. *Land, etc., Imp. Co.,* 82 Fed., 381, 27 C. C. A., 305, 40 L. R. A., 393; *Walter* v. *Brown,* 115 Iowa, 360, 88 N. W., 832; *Hooper* v. *DeVries,* 115 Mich., 231, 73 N. W., 132; *Hull* v. *Diehl,* 21 Mont., 71, 52 Pac., 782; *Paul* v. *Kerswell,* 60 N. J. Law, 273, 37 Atl., 1102; *Protection Bldg., etc., Ass'n* v. *Knowles,* 54 N. J. Eq., 519, 34 Atl., 1083; *Beman* v. *Douglas,* 1 App. Div., 169, 37 N. Y. Supp., 859; *Varwig* v. *Cleveland, etc., Co.,* 54 Ohio St., 455, 44 N. E., 92; *Advance Thresher Co.* v. *Esteb,* 41 Or., 469, 69 Pac., 447.

It results that Webb and the heirs of Howard must be considered as purchasers without notice of the prior unregistered deed of John B. Hamilton. From this it necessarily follows that the rights of those who claim

under Webb and Howard's heirs (that is, under the chancery proceedings in the case of *J. L. Webb et al.* v. *Newcastle & Danville R. R. Co.*) are superior to the rights of those claiming under John B. Hamilton (that is, under the unregistered deed).

This result is reached, as we have seen, not under the law of *lis pendens*, as technically understood, inasmuch as the suit in question had ended when the deed was registered, but was found to follow as the necessary sequence of a true construction of our registration laws.

In what we have said to this point, we have assumed the validity of the chancery proceedings referred to. Complainant however insists that those proceedings were void. We now proceed to an examination of that question.

John B. Hamilton having registered his deed after the complainants in the case of *J. L. Webb et al.* v. *Newcastle & Danville R. R. Co.* had obtained their decree, he, claiming under the railroad company, must be treated as privy to it, in respect of that litigation, and bound by the result of it, and standing in the same position in respect of a collateral attack upon the proceedings therein. The present complainant claims under John B. Hamilton, and stands upon no higher ground than he would have occupied if he were bringing the present suit.

On collateral attack upon a judgment or decree of a court of general jurisdiction by parties or privies thereto, the rule is that such judgment or decree cannot

be questioned except for want of authority over the matters adjudicated upon; and this want of authority must be found in the record itself. In the absence of anything in the record to impeach the right of such a court to determine the question involved, there is a conclusive presumption that it had such right. *Reinhardt* v. *Nealis*, 101 Tenn., 169, 172, 173, 46 S. W., 446. This rule presupposes, of course, that the court has acquired jurisdiction of the persons appearing to be parties to the cause. This fact must also be determined from the face of the record, and in conducting such examination every reasonable presumption will be indulged in favor of the jurisdiction. *Robertson* v. *Winchester*, 85 Tenn., 171, 183-186, 1 S. W., 781; *Hopper* v. *Fisher*, 2 Head, 253, 254. The evidence on which the court acted cannot be looked to. If the bill or other pleading make a case, and the court in its judgment or decree assume the case to have been established, that is sufficient. *Kindell* v. *Titus*, 9 Heisk., 727; *Pope* v. *Harrison*, 16 Lea, 82.

There can be no doubt that in the case of *J. L. Webb et al.* v. *Newcastle & Danville Railroad Company* the court acquired jurisdiction of the land, the subject-matter of the controversy, if it obtained jurisdiction of the party appearing to be defendant thereto. The objections made are directed to the latter point.

These objections rest upon the following facts:

The defendant thereto was proceeded against as a nonresident. The bill charged that it had been created

a corporation under the laws of the State of Indiana, that its corporate name was the "President, Directors, and Company of the Newcastle & Danville Railroad," and that it was a nonresident. In the publication notice the case was styled "John L. Webb and others v. The Newcastle and Danville Railroad Company," and in the body of the notice the defendant was referred to by the same name as that appearing in the style. In the order *pro confesso* the defendant was spoken of and referred to as "the President and Directors of the Newcastle and Danville Railroad Company." In the decree adjudging the rights of the parties it is recited that the cause came on to be heard "upon complainants' bill, and the order *pro confesso,* and proof in the cause." All through the decree the defendant is referred to under the name of the "Newcastle and Danville Railroad Company," and title is divested out of it in that name. It is clearly inferable, also, from that decree, that the defendant commonly used that name, that the conveyance of the land in question was made to it in that name, and that its stock certificates were issued in that name. From the face of the record, then, we are authorized to infer that, while the charter name of the corporation was the "President and Directors of the Newcastle and Danville Railroad Company," the corporation was accustomed to use, and had acquired by usage, the shorter name of "the Newcastle and Danville Railroad Company." The question of identity being thus settled, it might be proceeded against in either name. 1 Thomp-

son on Corporations, sections 285, 286, 291-293; 3 Thompson on Corporations, section 3729; 6 Thompson on Corporations, sections 7610-7612. And see 10 Cyc., 151. In the case referred to, the defendant having been proceeded against in both of its names, there can be no doubt that it was properly before the court. We attach no importance to the slight variation between the corporate name as stated in the bill and in the order *pro confesso*.

Another point made against the proceedings is that there was no oath to the bill. It is not necessary that the oath should be attached to the bill. It may be on a separate piece of paper. We must presume, on collateral attack, that the proper oath was filed.

Other questions are made in the briefs of counsel, as that the deed to John B. Hamilton was void for want of a seal, and that he procured the deed from the Newcastle & Danville Railroad Company in pursuance of a conspiracy between him and the railroad company to defraud Webb and Howard and others of their lands. But, the questions already disposed of being decisive of the case, we need not consider these questions, or others made by counsel.

We shall add, only, that the complainant is in error in assuming that we determined at the last term, in favor of complainant's contention, in the case of *J. B. Wilkins* v. *Poe Caldwell and others* (not for publication), the questions now held to be decisive in the pres-

Wilkins v. McCorkle.

ent case. Those questions were expressly pretermitted in the opinion filed in that case.

For the reasons stated here, the decree of the chancellor must be affirmed, with costs.