Antone NORDLING, Appellant,

v.

Peter CARLSON and Clement G. MacRae, Appellees.

No. 15802.

United States Court of Appeals Ninth Circuit.

Oct. 17, 1958.

Bell, Sanders & Tallman, Anchorage, Alaska, for appellant.

Davis, Hughes & Thorsness, Anchorage, Alaska, for appellee.

Before HEALY, FEE and HAMLIN, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

By two deeds dated July 8, 1948, and August 3, 1948, Allen Stoddard conveyed to Antone Nordling a parcel of real property near Anchorage, Alaska, for cash payment. Although Nordling claimed to have registered these deeds in the Territorial Land Office, there was no legal record of such conveyances at the time. On February 3, 1949, the same Allen Stoddard, for a valuable consideration, conveyed the identical parcel of real property to McDowell, who duly and properly recorded the deed therefor on August 9, 1949, as the face of the instrument shows.

At the time of these transactions, the record title to this parcel did not stand in the name of Allen Stoddard at all, but in the name of Otis John Sasse. A quitclaim deed from Otis John Sasse and Betty Sasse to Allen Stoddard for this parcel was recorded on November 28, 1951. And on the same day there was duly recorded a warranty deed for this parcel from McDowell to William and Lola Russell.

The Russells placed a mortgage on the property (which was subsequently paid) and then conveyed the parcel by deed duly recorded February 20, 1952, to Peter Carlson and Clement G. MacRae, who are appellees here.

Nordling properly recorded his deeds from Stoddard on July 3, 1952.

Carlson and MacRae, as plaintiffs, brought action on May 20, 1953, for possession of this real property. Nordling filed answer and cross-complaint claiming title. The District Court found for plaintiffs, and this appeal followed.

Under the provisions of Title 22–3–25 Alaska Compiled Laws Annotated, 1949, every conveyance of real property which is not filed for record as provided by the laws of the Territory of Alaska is deemed to be void as against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property whose conveyance shall be first duly recorded.

Nordling claimed that he went into possession at the time he purchased the property in 1948 and has been in possession ever since that time, and thereby all subsequent purchasers were put on notice regarding his rights, and none could have been purchasers in good faith.

The evidence shows Nordling was living, but not present, upon the premises at the time appellees purchased them. But the trial court found that Russell, grantor of appellees, showed them the

wrong piece of land and that neither had any knowledge of the Nordling claim or occupancy. In 1948, Stoddard was living on the premises in a shack worth $100.00. The trial court found that the property was vacant from the time of the deeds to Nordling in 1948 and at the time of the conveyance to McDowell on February 3, 1949, and up until May or June, 1949. The evidence shows that Nordling was not on the property or in Anchorage during the winter of 1948–1949.

In May or June, 1949, Nordling did add another room to the house and rented it. He moved into the house in October or November, 1949, and in 1950 he dug a basement and a well and made certain other improvements. It appears from the record that Nordling was absent for long periods of time from Anchorage and even from Alaska when he claimed to be occupying the land.

There was no showing in the record of actual notice of the claim of Nordling by any of the purchasers of the property. It is claimed occupancy gave constructive notice. But Nordling was not in occupancy when McDowell purchased. When the Sasse and McDowell deeds were placed on record on November 28, 1951, an occupancy ceased to have effect against the recorded deeds. From that time on, at least, Nordling was a trespasser.

The District Court gave judgment for damages, which is urged as error but upon which there is no conflict of evidence to review. Nordling was permitted to remove the house from the premises, since appellees lay no claim thereto.

The first contention of Nordling is that he was in actual possession of the premises at the time Carlson and MacRae purchased the property on February 1, 1952, and that the latter had constructive notice of all the facts which they might have discovered after conducting a reasonable inquiry. Therefore, the argument proceeds that Carlson and MacRae were not innocent purchasers for value. The trial court had, however, found to the contrary.

The controlling statute of Alaska provides:

"Invalidity of unrecorded conveyance against subsequent innocent purchaser. Every conveyance of real property within the Territory hereafter made which shall not be filed for record as provided in this chapter shall be void against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance shall be first duly recorded." § 22–3–25, A.C.L.A. (1949).

It is everywhere accepted law, that, where a person is in visible possession of real property adverse to the world and open and notorious, notice must be taken of his actual rights. A purchaser would be placed upon notice thereby. By the finding that Carlson and MacRae were bona fide purchasers for value, the trial court settled this controversy on the facts. This Court accepts the finding. It was not clearly erroneous. The consideration paid by the purchasers was adequate, according to the evidence. There was no actual notice. The burden of proof was upon Nordling and not upon Carlson and MacRae.

"It is maintained that the burden of proving that Mrs. Esteb was an innocent purchaser for a valuable consideration, and without notice, was imposed upon her, but, as she failed to comply with such rule, the court erred in rendering the judgment complained of. This is not a suit in equity to set aside an alleged fraudulent conveyance, in which there is imposed upon the grantee the duty of alleging, and in some instances the burden of showing, that he is an innocent purchaser for a valuable consideration, and without notice. * * * This being an action at law to recover possession of real property, the defendants, observing the rule prescribed by statute * * * averred in their answer the nature and duration of

their alleged estate in the premises, and offered proof thereon, and that was all that was required of them." Advance Thresher Co. v. Esteb, 41 Or. 469, 477–478, 69 P. 447, 450.

The Oregon law is apposite since the Alaska statute was taken directly from Oregon. The trial court found that the bare possession of Nordling was not such as to put these purchasers on notice of any claim upon them.

If inquiries had been made, it would have been discovered that Nordling had a quitclaim deed from Stoddard at a time when the latter was not the record owner of the title, which at that time stood in the name of Sasse. The perfect record title extending from Sasse to the Russells, grantors of these purchasers, would have been patent. Nordling claims that the recordation of the deed from Sasse to Stoddard of a later date than his own quitclaim inured to his benefit.

But here Nordling flies in the face of the policy of the recording acts. By his negligence in failure to record, he lost all protection.

"If the law provides a place where any man who owns an interest in real estate can give notice of it to all the world with the assurance that his rights will be protected thereby, and a prospective purchaser, on the other hand, can with equal safety investigate, and be confident that no rights not disclosed therein are valid against him in the absence of his knowledge thereof, we can hardly imagine a more beneficial institution. We think, therefore, that we should construe the recording acts so as to afford the greatest possible protection to the man who in good faith endeavors to comply with them.

"* * * In every case when the question could possibly arise it is not the one who took under the prior unrecorded instrument who was deceived; it is, on the contrary, the subsequent purchaser who has in good faith been diligent, and relied on the records, who has been misled to his injury by the first purchaser, who has neglected the plain warning of the statute. 'Equity favors the diligent and not those who sleep on their rights', * * *." Phoenix Title & Trust Company v. Old Dominion Company, 31 Ariz. 324, 335–336, 253 P. 435, 439, 59 A.L.R. 625.

It would be impossible for one who was not present on the ground to pay valuable consideration in good faith for real property in reliance upon the public records if his title could be overthrown by proof of vague squatter occupancy of land,[1] general rumors, reports, surmises or general assertions as to ownership or title to lands where the deed is not timely of record.

But the situation which Nordling cannot escape is the prior purchase of the real property by McDowell in good faith and for valuable consideration at a time when Nordling was not in actual occupancy of the property and at a time when his deeds were not of record. The recording of this deed cut off all prior claims in accordance with the plain language of the statute above quoted. The remote purchaser in the chain of title from McDowell received the protection of the record.

Affirmed.

---

1. The effect which is here given to the conveyance is strengthened by an Alaska statute: "No * * * conveyance of land * * * shall be void for the reason that at the time of the execution thereof such lands shall be in the actual possession of another claiming adversely." § 22–3–7, A.C.L.A. (1949).