## REINHARDT *v.* NEALIS.

### (*Jackson.* May 28, 1898.)

1. CHANCERY JURISDICTION. *Over collection of taxes.*

    Acts 1895, Ch. 120, prescribing an *in rem* proceeding for the collection of taxes of that and succeeding years, and incidentally requiring collection of delinquent taxes of former years, where sales are made under that Act, does not repeal or affect the jurisdiction of the Chancery Court to enforce collection of taxes for years anterior to 1895, when a sale is not necessary under Acts of 1895. (*Post, pp. 170–172.*)

    Acts construed: Acts 1895, Ch. 120.

2. COLLATERAL ATTACK. *Upon tax title made through Chancery Court.*

    In a suit making collateral attack upon a tax title, acquired at chancery sale, for the taxes of a year prior to 1895, it is not competent to show, by matter *dehors* the record of the original case, in order to defeat the Court's jurisdiction to make the sale, that there were taxes due for 1895 or subsequent years, authorizing *in rem* proceedings and sale under Acts of 1895, Ch. 120, and therefore requiring incidentally the collection of taxes for former years without suit. (*Post, pp. 172–174.*)

3. SAME. *General rule.*

    A domestic judgment of a Court of general jurisdiction, proceeding according to the course of the common law, cannot be impeached collaterally by the parties to it, where a want of jurisdiction is not apparent upon the face of the record. (*Post, pp. 173, 174.*)

    Cases cited and approved: Harris *v.* McClanahan, 11 Lea, 185; Robertson *v.* Winchester, 85 Tenn., 187; Hopper *v.* Fisher, 2 Head, 256; Kilcrease *v.* Blythe, 6 Hum., 389; Winchester *v.* Winchester, 1 Head, 460; Kindell *v.* Titus, 9 Heis., 727; Pope *v.* Harrison, 16 Lea, 82.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. LEE THORNTON, Sp. Ch.

W. W. Goodwin and Geo. Gilham for Reinhardt.

F. H. Heiskell for Nealis.

Beard, J.   The bill in this cause was filed for the purpose of impeaching a decree entered in another case by the Chancery Court of Shelby County, for the sale of a certain lot in Memphis, enforcing that city's lien for taxes due from the complainant, its former owner, and to avoid a title thereto acquired by one Nealis, as purchaser, under the terms of that decree.

The bill alleges that this property, having become delinquent for taxes due in the year 1895, was so certified by the County Trustee to the Back Tax Attorney appointed by the Comptroller of the State, who, acting under the authority of Sec. 76, *et seq.*, of Ch. 120 of the Acts of 1895, after due advertisement, at a public sale made by him in accordance therewith, struck it off to the State for about $832, this being the aggregate of all the taxes and costs due, including the taxes adjudged in favor of the city in the cause referred to, and that subsequent to the sale by the back tax attorney, occurred the sale at which the defendant, Nealis, bought.

The theory of the bill is that the necessary effect of Chapter 120 of the Acts of 1895 was to repeal, by implication, the pre-existing statutes upon which it is averred rested the proceedings in the Chancery Court resulting in the sale to Nealis, and thus deprived that Court of the jurisdiction to pronounce

the decree under which that sale was made. In other words, the contention of complainant is, that in all cases covered by the Act, so radical is the change in our system of collection of all delinquent revenue, provided by it, that it superseded all prior statutory remedies, and left the Chancery Court without jurisdiction to pronounce the decree in question.

The cause is before us by appeal from a decree dismissing the bill upon a demurrer raising the question as to the power of the Chancery Court, in this case, upon the averments of the bill, to impeach or review the decree of the same Court pronounced in another cause. Upon its face the present bill shows that the cause in which the decree was pronounced under which Nealis bought, was instituted by the State of Tennessee, for the use of the city of Memphis, against the complainant, Mrs. Reinhardt, as the owner of the lot in question, to enforce a lien for taxes thereon due to the city for the year 1893. There is no pretense that the complainant here was not regularly served with process in that case, or that the Chancery Court did not have jurisdiction to enforce this lien, unless it be that it was, by implication, deprived of this jurisdiction by the Act of 1895. There is no recital in the present bill from which it can be inferred that taxes for any other year than those due for the year 1893 were claimed, and especially there is no charge that anywhere in the record of that cause was it made to appear that any taxes were due upon the lot in question which

would call into operation Chapter 120 of the Acts
of 1895. By Section 76 of that Act, it was enacted,
"that on the first Monday in June, 1895, and each
year thereafter, . . . the trustee shall deliver to
attorneys, to be appointed by the State Comptroller,
. . . certified statement of all taxes remaining
delinquent . . . for the current year." Subse-
quent sections provide the methods to be pursued
by the back tax attorney in collecting these delin-
quent taxes; but it is clear his power to act at all,
under the provisions of this statute, depends upon
the condition that a tax is "remaining delinquent"
for the current year, of which he receives the an-
nual statement from the County Trustee.

The preliminary objection made by the defendant,
Nealis, which we regard as decisive of the present
case, is, that this is a collateral attack upon a de-
cree of a superior Court, and an effort to defeat
its jurisdiction by showing a fact *dehors* the record.
Upon the face of the record in that cause, as ap-
pears from the recital of the present bill, the Chan-
cery Court had not only statutory, but inherent,
jurisdiction to pronounce its decree for sale for the
unpaid taxes of 1893, and it is now sought to de-
feat that jurisdiction by averring and proving in the
present case that taxes were delinquent for the year
1895, thus putting in operation the remedy provided
by Chapter 120 of Acts of 1895, which it is now
insisted was exclusive.

It is a familiar principle that the judgment or

decree of a Court of general jurisdiction cannot be collaterally questioned, except for want of authority over the matter adjudicated upon (Freeman on Jury, Sec. 132), and this want of authority must be found in the record itself. In the absence of anything in the record to impeach the right of such a Court to determine the question involved, there is a conclusive presumption that it had such right. *Id.*

As is said in *Pratt* v. *Dow*, 56 Me., 81: "We concur fully in the doctrine of the numerous cases cited for plaintiff, where it is held that a domestic judgment of a Court of general jurisdiction, proceeding according to the course of the common law, cannot be impeached by the parties to it, where a want of jurisdiction is not apparent upon the record, while it remains neither annulled or reversed." And so it has been held to be "the settled law of this State, deemed indispensable to that sanctity of judicial proceedings necessary for the public welfare, that domestic judgments of Courts of general jurisdiction cannot be collaterally attacked by evidence outside of the record itself." *Harris* v. *McClanahan*, 11 Lea, 185. To like effect are *Robertson* v. *Winchester*, 1 Pickle, 187; *Hopper* v. *Fisher*, 2 Head, 256; *Kilcrease* v. *Blythe*, 6 Hum., 389; *Winchester* v. *Winchester*, 1 Head, 460.

*Kindell* v. *Titus*, 9 Heis., 727, was a bill filed to set aside as void a sale of real estate made by order of the County Court, under the Act of 1827, Ch. 54. While recognizing that the jurisdiction there

conferred was purely statutory and of a limited char-
acter, yet this Court applied this rule and said:
"We hold, then, the true principle to be, that
where the bill or petition alleges all the facts re-
quired by the statute in order to sell the land, and
the decree states these facts to have been made out
to the satisfaction of the Court, and assumes them as
the basis and the ground on which the Court orders
the sale, that then in a collateral proceeding, seeking
to attack the sale for want of jurisdiction to make
it, the evidence on which the Court acted cannot be
looked to, nor can the correctness of the conclusion
at which the Court arrived from the evidence, be
investigated by another inferior Court, in order to
declare the decree thus made valid or void. The
case made in the pleadings—*i. e.,* the bill or petition
and the decree of the Court—alone can be looked to
to test the jurisdiction." And such is the regard
entertained for the judgment of a Court of general
jurisdiction, that even "though the existence of any
jusisdictional fact may not be affirmed in the record,
it will be presumed, upon a collateral attack, that the
Court . . . has acted correctly and with due
authority." *Pope* v. *Harrison,* 16 Lea, 82.

We think, on reason and authority, the insistence
of complainant cannot be maintained, and that the
Chancellor was right in dismissing complainant's bill.
With regard to the suggestion of hardship, by reason
of the assumed disparity between the value of the
lot in controversy and the amount bid by Nealis for

Reinhardt *v.* Nealis.

it, it is proper to say that this is greatly modified by the fact that he will take it subject to all the taxes accrued against it later than those embraced in the decree of foreclosure under which he purchased.

Decree affirmed.