# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### APRIL 18, 2007 Session

## TERRIE LYNN HALL HANKINS v. JAMES MICHAEL HANKINS

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-007025-03     John R. McCarroll, Judge**

_____

**No. W2006-00232-COA-R3-CV - Filed August 20, 2007**

_____

In this case, the plaintiff wife filed for divorce from the defendant husband in December of 2003. The husband collaterally attacked the validity of the wife's previous divorce from her second husband in 1985, asserting that the wife was still married to her second husband. The trial court bifurcated the proceedings to determine the validity of the parties' marriage. After the hearings on this issue, the trial court found that the wife's efforts at service of process on her second husband during her second divorce had been insufficient, and ruled that any subsequent marriage was therefore invalid. After conducting further hearings as to the parties' property, in its order on division of assets, the court found that a bank account held jointly by the parties was the sole property of the husband, and it awarded each party a one-half interest in real property located in Humphreys County, Tennessee. We affirm in part, reverse in part, and remand for further proceedings in the circuit court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Stuart B. Breakstone, Kathy Baker Tennison, Memphis, TN, for Appellant

Larry Rice, Memphis, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

This appeal arises from divorce proceedings in which the defendant husband collaterally attacked a prior divorce decree obtained by the plaintiff wife. Terrie Hankins ("Appellant") and James Hankins ("Appellee") were married in 1996. At the time, Appellant had previously been married and divorced three times.

In June of 1975, Appellant, an Alabama resident at the time, married her first husband, Mr. Fowler. The couple obtained a divorce in Montgomery County, Alabama in November of 1975. In April of 1976, Ms. Hankins married her second husband, Mr. Baker. The couple had a daughter, Deliverance, who was born in August of 1977. In 1979, because of physical abuse resulting in hospitalization seven times in one year, Ms. Hankins left Mr. Baker and moved to Montgomery, Alabama with Deliverance. She claims that Mr. Baker "kidnapped" Deliverance in March of 1980 and took her to his parents' home in Alabama. Ms. Hankins regained physical custody of Deliverance in July of 1980, with the aid of Mr. Baker's sister. At some point in 1980, Appellant moved with Deliverance to live with her eventual third husband, Mr. Peal, in Memphis, Tennessee. In March of 1985, she retained an attorney and filed a complaint for divorce from Mr. Baker in Memphis circuit court. The complaint alleged that Mr. Baker's address was "unknown and cannot be ascertained after diligent search and inquiry" and that the parties separated "on or about 11/15/79." Notice of the divorce was published on four occasions from March to April of 1985 in the Daily News, a Memphis newspaper, by Ms. Hankins's attorney at the time. The circuit court entered an order on default judgment in favor of Ms. Hankins in June of 1985. The circuit court entered a final decree of absolute divorce in August of 1985 based upon Ms. Hankins's allegations of "cruel and inhuman treatment or conduct toward Plaintiff as renders cohabitation unsafe and improper," and the court granted her exclusive custody of Deliverance. Years later, in 1997, Mr. Baker, who had remarried, died.

In June of 1986, Appellant married Mr. Peal, and they lived together in Memphis. She and Mr. Peal filed a petition for adoption of Deliverance in July of that same year. The couple published notice of the adoption in Shelby County and in Huntsville, Alabama. The adoption was granted after no objection was offered by Mr. Baker, Deliverance's biological father. Ms. Hankins and Mr. Peal divorced in Memphis in July of 1987.

Mr. and Ms. Hankins were married on March 15, 1996, after living together for three years. Throughout the marriage, Appellant was not employed outside of the home. Ms. Hankins filed a complaint for divorce from Mr. Hankins on December 17, 2003. Mr. Hankins filed an answer and counter-complaint on December 31, 2003. On March 31, 2004, the trial court ordered Mr. Hankins to pay *pendente lite* support on the behalf of Ms. Hankins, in the amount of $4,000 per month, and to maintain her health, life, and automobile insurance. The court later awarded Ms. Hankins $20,000 to be placed in escrow for the purpose of paying her pretrial expenses.

Mr. Hankins filed a motion to dismiss on January 6, 2005. After taking the deposition of Ms. Hankins, Mr. Hankins filed a motion to bifurcate the trial, in order to first determine whether the parties' marriage was valid. Mr. Hankins alleged that Appellant's 1985 divorce decree from Mr. Baker, her second husband, was void for lack of jurisdiction. The trial court granted the motion for bifurcation and stayed all discovery except for issues at the core of the validity hearing. On March 4, 2005, Mr. Hankins filed a motion for summary judgment, and a statement of material facts in which he cited the deposition testimony of Ms. Hankins. His summary judgment motion was denied by the trial court on May 6, 2005, as was his later filed motion to reconsider the ruling. Appellee's Rule 9 application for appeal as to this interlocutory order of the trial court was denied by this Court on August 2, 2005.

On November 14 and 15, 2005, the trial court held hearings to determine the validity of the parties' marriage, based upon Appellee's attack of Appellant's divorce from Mr. Baker. In an order on the validity of marriage entered on November 22, 2005, the trial court concluded that Mr. Hankins had standing to raise the issue of a previous marriage, still subsisting. The trial court found that Ms. Hankins had not made a diligent search and inquiry regarding Mr. Baker's whereabouts prior to obtaining a divorce from him in 1985. The court further concluded that "the result of the insufficient notice and unconstitutional lack of due process" was that her divorce from Mr. Baker was invalid. The trial court found that marriage by estoppel did not apply, and that Ms. Hankins had knowingly entered into a second marriage in violation of a previous marriage, still subsisting.

On January 27, 2006, after holding further hearings on the issue of property division, the court entered an order on the division of assets. The court found that a jointly held bank account was the sole property of Mr. Hankins, to which Ms. Hankins held no interest. The court ordered that each party be awarded a one-half interest in real property located in Humphreys County. Although the parties filed additional pleadings and motions, including motions for contempt, the trial court dismissed or denied these remaining pleadings and motions by order on February 7, 2007, and stated that the November 22, 2005 "Order on the Validity of Marriage" and the January 27, 2006 "Order on Division of Assets" were the final orders in this case. Ms. Hankins filed a timely notice of appeal.

## II. ISSUES PRESENTED

Both parties have presented issues to this Court for consideration on appeal. Ms. Hankins frames her issues, which we have restated slightly, as follows:

1.  Whether the trial court erred in allowing Mr. Hankins to collaterally attack the validity of the divorce decree that Ms. Hankins obtained in 1985 against her second husband, Mr. Baker.

2.  Whether principles of *res judicata* precluded the trial court from reconsidering the issue of improper service as to the Baker divorce decree.

3.      Whether the trial court erred by failing to require Mr. Hankins to present cogent and convincing evidence of the invalidity of the Baker divorce decree.

4.      Whether, in the alternative, the trial court erred in failing to award Ms. Hankins an interest in the jointly held bank account of the parties.

Mr. Hankins offers the following issues for our review:

1.      Whether the trial court erred in awarding a one-half interest to Ms. Hankins in the real property located in Humphreys County, Tennessee.

2.      Whether the trial court erred when it awarded alimony, in the form of *pendente lite* support, to Ms. Hankins, when the trial court found that the parties were not validly married.

Having found two of these issues to be dispositive of this appeal, we affirm in part, reverse in part, and remand for further proceedings.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

### A. Collateral Attack of the Baker Divorce Decree

The record before this Court, related to the 1985 Baker divorce at issue, contains Ms. Hankins's sworn complaint for divorce, the divorce referee's answer, proof of publication, an order on default judgment, and a final decree for divorce entered by the circuit court ("the Baker divorce decree"). The Baker divorce decree, entered on August 2, 1985, by the Honorable William W. O'Hearn, provides as follows:

Final Decree of Absolute Divorce

This cause came on to be heard upon the original Complaint for Divorce filed herein by the Plaintiff, TERRIE LYNNE HALL BAKER, service upon the Defendant by publication, upon Answer of the Divorce Referee, upon judgment by default judgment against the Defendant, and upon the testimony in open Court of TERRIE LYNNE HALL BAKER, and her two witnesses, Ailene Hall and Dianna Craige, from statement of counsel for Plaintiff, and upon the entire record in the cause, from all of which it satisfactorily appears as follows:

It appears to the Court from the testimony adduced in this cause that the allegations as set forth in the Complaint for Divorce are true and that the Defendant is guilty of such cruel and inhuman treatment or conduct toward Plaintiff as renders cohabitation unsafe and improper.

It is, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff, Terrie Lynne Hall Baker, is hereby awarded an absolute divorce from the Defendant, Roger Glenn Baker, and that the bonds of matrimony heretofore subsisting between the parties are hereby dissolved and forever held for naught and that the parties hereto be restored to all the rights and privileges of unmarried persons.

IT IS, FURTHER, ORDERED, ADJUDGED AND DECREED BY THE COURT:

1. That the Plainitff [sic] be awarded the exclusive care, custody and control of the parties [sic] minor child, Deliverance Alethia Baker, but the matter of child support is reserved.

2. That the costs of this cause shall be assessed against the Plaintiff, for all of which let execution issue.

Mr. Hankins first sought to attack the validity of the Baker divorce decree in his motion to dismiss filed on January 6, 2005. After taking the deposition of Ms. Hankins, Mr. Hankins filed a motion to bifurcate the trial, in order to determine the status of the 1996 Hankins marriage, and a memorandum of law in support of his contention that the Baker divorce decree was void. Appellee pointed out that, in her divorce complaint from 1985, Ms. Hankins claimed to have been unable to find Mr. Baker's residence after a diligent search, and that her attorney had issued service by publication. In the motion, Mr. Hankins relied exclusively upon the deposition testimony of Ms. Hankins from January of 2005 to allege the following:

At the time [1985], Plaintiff knew Mr. Baker and his family were still living on their family farm in New Hope, Alabama. (citation omitted). She had been to that farm several times and actually knew Mr. Baker resided there for a time after their separation. . . . Plaintiff

did not attempt to find Mr. Baker and in fact was purposefully hiding from him.  (citation omitted).

The trial court allowed Mr. Hankins to amend his counter-complaint in order to seek an annulment of his marriage to Ms. Hankins, based upon a prior, existing marriage to Mr. Baker.

> The Supreme Court of Tennessee has held:
> > If an action or proceeding is brought for the very purpose of impeaching or overturning a judgment, it is a direct attack on it . . . . On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important, or even necessary to its success, then the attack upon the judgment is collateral.

*Turner v. Bell*, 279 S.W.2d 71, 75 (Tenn. 1995) (quoting *Jordan v. Jordan*, 239 S.W. 423, 445 (Tenn. 1922)).  As this principle is applied to the case at bar, we find it apparent that Appellee's attack on the validity of the Baker divorce decree is clearly to be considered collateral, rather than direct, in nature.  Mr. Hankins even acknowledged that it was a collateral attack in his memorandum of law accompanying the motion to bifurcate filed with the trial court on January 21, 2005, because "the purpose of attacking [the decree was] for an independent purpose and contemplate[d] some other relief or result other than simply setting aside the [Baker] Final Decree of Divorce."

On collateral attack upon a judgment or decree of a court of general jurisdiction by parties or privies thereto, the rule is that such judgment or decree cannot be questioned except for want of authority over the matters adjudicated upon; and this want of authority must be found in the record itself.  *J.B. Wilkins v. M.C. McCorkle*, 112 Tenn. 688, 707-08, 80 S.W. 834, 838 (Tenn. 1904).  In the absence of anything in the record to impeach the right of such a court to determine the question involved, there is a conclusive presumption that it had such right.  *Id.* (citing *Reinhardt v. Nealis*, 101 Tenn. 169, 172-73, 46 S.W. 446, 447 (Tenn. 1898)).  This rule presupposes, of course, that the court has acquired jurisdiction of the persons appearing to be parties to the cause.  *Id.*  This fact must also be determined from the face of the record, and in conducting such examination every reasonable presumption will be indulged in favor of the jurisdiction.  *Id.* (citing *Robertson v. Winchester*, 85 Tenn. 171, 183-86, 1 S.W. 781, 785-86 (Tenn. 1886); *Hopper v. Fisher*, 2 Head 253, 254 (Tenn. 1858)).  The evidence on which the court acted cannot be looked to.  *Id.*  If the bill or other pleading makes a case, and the court in its judgment or decree assumes the case to have been established, that is sufficient.  *Id.* (citing *Kindell v. Titus*, 9 Heisk. 727 (Tenn. 1872); *Pope v. Harrison*, 84 Tenn. 82, 92-93 (Tenn. 1885)).

When the jurisdiction of a court depends upon the existence of a certain fact and the record shows that the court has found that fact, that determination is not subject to collateral attack in another court of this state.  *Henson v. Henson*, Shelby Equity No. 23, 1989 Tenn. App. LEXIS 480, at *6 (Tenn. Ct. App. July 11, 1989).  The first judgment, even if in point of fact rendered without the requisite jurisdiction, must stand until reversed on appeal.  *Id.* (citing *State ex rel. Holbrook v.*

***Bomar***, 211 Tenn. 243, 247, 364 S.W.2d 887, 989 (Tenn. 1963)). In a suit seeking to have a previous judgment declared void for lack of jurisdiction, the evidence on which the prior court acted cannot be looked to, nor can the correctness of the conclusion reached from that evidence be investigated by another inferior court in order to declare the decree thus made valid or void. ***Id.*** at *7 (citing ***Reindhardt***, 101 Tenn. at 174, 46 S.W. at 477)).

In ***Gentry v. Gentry***, 924 S.W.2d 678, 680 (Tenn. 1996), the Tennessee Supreme Court most recently discussed collateral attacks on divorce decrees. The Court noted that "[t]he few Tennessee cases involving similar attacks on divorce decrees support this conclusion that a divorce decree is void and subject to attack only where the trial court lacks general jurisdiction of the subject matter, rules on an issue wholly outside the pleadings, or lacks jurisdiction over the party complaining." ***Id.*** The Court cited GIBSON'S SUITS IN CHANCERY § 228 at 219-20 (7th ed. 1988) for the statement that "[a]ll decrees not thus appearing on their face to be void are absolutely proof against collateral attack, *and no parol proof is admissible on such an attack to show any defect in the proceedings, or in the decree*." ***Id.*** (emphasis added).

We find that the 1985 Baker divorce decree is not void on its face for lack of jurisdiction. In her sworn complaint, Ms. Hankins stated that the address of Mr. Baker was unknown and could not be ascertained after diligent search and inquiry. The proof of publication in the record shows that notice of the divorce was published in the The Daily News on March 12, 19, 26, and April 2, 1985. In the decree, the trial court explicitly stated its finding that service had been effected upon Mr. Baker by publication. Despite his contentions otherwise, this finding was not subject to collateral attack by Mr. Hankins. *See* ***Henson***, 1989 Tenn. App. LEXIS 480, at *6.

As held by our Supreme Court in ***Hamm v. Hamm***, 204 S.W.2d 113, 117 (Tenn. 1947):

> The view entertained by the weight of authority is that the marital status or relation is itself a *res* in the sense that a proceedings affecting it alone is a proceeding *in rem* or *quasi in rem* where substituted service by publication is sufficient to answer the requirement of due process . . . . This is the view of the courts in this jurisdiction.

(citations omitted). Mr. Hankins cites ***Baggett v. Baggett***, 541 S.W.2d 407 (Tenn. 1976), and ***Young v. Young***, Nos. 02A01-9506-GS-00133, 3469, 1996 WL 544383 (Tenn. Ct. App. Sept. 25, 1996), *appeal denied*, *concurring in results only* (Tenn. Feb. 3, 1997), in support of his contention that the publication attempted in 1985 did not satisfy due process requirements for notice to nonresident defendants in divorce actions. *Baggett* and *Young* are distinguishable because, in both of those decisions, the parties challenging the validity of a divorce were defendants in the divorce actions at issue. Conversely, the case *sub judice* involves a stranger to the Baker divorce, Mr. Hankins, who challenged the validity of the decree in order to assert his own counterclaim. As a brief aside, we express doubt as to whether Mr. Hankins, a stranger to the Baker divorce proceedings, had standing to allege violations of Mr. Baker's constitutional rights in those proceedings, particularly when it is

-7-

clear from the record that Mr. Baker himself never sought to do so and even subsequently remarried prior to his death in 1997. We find the following language persuasive, in an opinion from the United States Court of Appeals for the District of Columbia involving a factually similar situation where a husband sought to annul his marriage based upon his wife's allegedly invalid Tennessee divorce:

> The reasons supporting the view first stated have no application when the challenge to the jurisdiction is made on the ground that the notice given to the defendant was lacking in due process. Such an attack does not reach down to the fundamental authority of the court to deal with the subject matter of the suit. It affects rather the personal protections which it is required to give to the defendant, such as affording him a reasonable opportunity to appear and be heard. *That is a matter which primarily, if not perhaps exclusively, concerns him, rather than strangers to the suit.*

**Saul v. Saul**, 122 F.2d 64, 70 (D.C. Cir. 1941) (emphasis added).

Regardless, and without expressly deciding the issue of standing, we find *Baggett* and *Young* otherwise distinguishable from the case at bar. Most notably as to the present case, those decisions held that publication is an insufficient means of process for a nonresident defendant whose address is actually known or easily ascertainable after inquiry. *See Young*, 1996 WL 544383, at *3 (citing **Love v. First Nat'l Bank**, 646 S.W.2d 163, 165 (Tenn. Ct. App. 1982)); **Baggett**, 541 S.W.2d at 411 (citing **Schroeder v. City of New York**, 371 U.S. 208, 83 S. Ct. 279, 282, 9 L. Ed. 2d 255 (1962)). Again, Ms. Hankins stated in the Baker divorce complaint that Mr. Baker's address was unknown and could not be ascertained after diligent inquiry. Nothing appears on the face of the record of the Baker divorce decree to indicate that this statement was false at the time it was offered. As such, the Baker court's finding in the decree that service was effective through publication was not subject to collateral attack by Mr. Hankins. *See Henson*, 1989 Tenn. App. LEXIS 480, at *6.

Mr. Hankins sought to invalidate the 1985 Baker divorce based upon Ms. Hankins's responses to questioning at a deposition occurring nearly twenty years later, in which she allegedly conceded that she had not conducted a diligent inquiry as to the last known address of Mr. Baker prior to publication of notice of the divorce in 1985. The court below held hearings on the validity of the Hankins marriage at which Ms. Hankins was submitted to further similar questioning in this regard, and the trial court relied upon this testimony, along with her deposition responses, to find that the Baker divorce decree was void. Viewing the record from the Baker divorce proceedings, we find that the trial court's allowance of a collateral attack by Mr. Hankins on the issue of jurisdiction was in contravention of the law as set forth in **Gentry**, 924 S.W.2d at 680, as his basis for such attack was, in fact, parol proof, and not a facially void decree.

Additionally, the trial court presiding over the Baker divorce clearly had subject matter jurisdiction over those proceedings. Subject matter jurisdiction to grant the divorce is based on the location of the *res* or status of the marriage. JANET L. RICHARDS, RICHARDS ON TENNESSEE FAMILY

LAW, § 6-2(b)(1) (2d ed. 2004). The *res* is found where either of the parties is domiciled. ***Id.*** (citing ***Williams v. North Carolina***, 317 U.S. 287 (1942)). Tenn. Code Ann. § 36-4-104(a) provides:

> A divorce may be granted for any of the aforementioned causes if the acts complained of were committed while the plaintiff was a bona fide resident of this state or if the acts complained of were committed out of this state and the plaintiff resided out of the state at the time, *if the plaintiff or the defendant has resided in this state six (6) months next preceding the filing of the complaint*.

(emphasis added). Residence as used in divorce statutes is treated as the domicile. ***Brown v. Brown***, 150 Tenn. 89, 261 S.W. 959 (Tenn. 1923). The first paragraph of Ms. Hankins's sworn complaint stated that she had been a resident of Shelby County, Tennessee, for more than six months prior to filing the complaint. As nothing affirmatively appears on the face of the record to contradict a finding of subject matter jurisdiction, and Mr. Hankins does not dispute that Ms. Hankins had lived in Tennessee for several years prior to filing for divorce from Mr. Baker, we find that the Baker decree was similarly not void for want of subject matter jurisdiction.

Furthermore, the Baker divorce decree did not rule on an issue wholly outside the pleadings. Ms. Hankins sought an absolute divorce based upon cruel and inhuman treatment or conduct by Mr. Baker, and she sought custody of the couple's minor daughter, Deliverance. The trial court presiding over the Baker divorce specifically granted her that relief in its decree.

### B. Property Division

Having found that the trial court erred by permitting Mr. Hankins to collaterally attack the Baker divorce decree, and that it erred in finding the Hankins marriage to be void *ab initio*, we turn to address the subsequent proceedings affecting the parties' property interests. The trial court held additional hearings in order to reach a decision as to equitable division of the assets of Mr. and Ms. Hankins. The court determined that ***Falk v. Falk***, No. M2003-02134-COA-R3-CV, 2005 Tenn. App. LEXIS 34 (Tenn. Ct. App. Jan. 21, 2005), was instructive on the issue of property division for litigants whose marriage was found to be void from its inception. In *Falk*, the trial court found that the wife had not obtained a valid divorce from a previous husband before marrying her current husband, granted the parties a divorce pursuant to Tenn. Code Ann. § 36-4-101(2) (2001), and applied marital property distribution principles in ordering an equitable division of the parties' house and personal property.[1] ***Id.*** at *16-23. On appeal, we agreed with the trial court's finding that the

---

[1] In *Falk*, the wife's previous divorce in California had not become final until three months after she remarried in Tennessee in 1995. 2005 Tenn. App. LEXIS 34, at *2. "On the front page of the California divorce judgment . . . was a warning statement set off in a box that read as follows: 'WARNING: NEITHER PARTY MAY REMARRY UNTIL THE EFFECTIVE DATE OF TERMINATION OF MARITAL STATUS AS SHOWN IN THIS BOX.'" Id. at *3, n. 1. After the previous divorce had become final, the wife had made no attempt to validly solemnize the subsequent marriage. ***Id.*** at *11. In 2003, wife filed a complaint for divorce in which she acknowledged that she

(continued...)

marriage was invalid, and found no abuse of discretion in its granting a divorce based upon bigamy. *Id.* at \*10-13. However, we reversed the trial court's order of property division, explaining:

It is well recognized that in a traditional divorce setting, trial courts have broad discretion in fashioning an equitable division of the marital estate, and appellate courts give great weight to a trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Such decisions regarding the division of the marital estate will be presumed correct unless the evidence preponderates otherwise or unless they are based on an error of law. *Id.* Tennessee, as a "dual property" state, distinguishes between "marital" and "separate" property in the context of a divorce proceeding. *Eldridge v. Eldridge*, 137 S.W.3d 1, 12 (Tenn. Ct. App. 2002) (citing *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988)). Only "marital property" is subject to equitable division by the courts. *Id.* at 12-13. Therefore, the trial court must make a threshold determination of whether certain property is "marital" or "separate." *Id.* at 13. However, because "marital property" is a legal fiction created by statute, *see* Tenn. Code Ann. § 36-4-121(b) (2001), "the concept has no real meaning outside of the realm of marital dissolution." *In re Hohenberg*, 174 B.R. 487, 493 (Bankr. W.D. Tenn. 1994). Thus, "marital property" is only considered in the context of an equitable division of property resulting from the dissolution of a valid marriage. *Arms v. Stanton*, 43 S.W.3d 510, 513 (Tenn. Ct. App. 2000); *see also* Janet L. Richards, Richards on Tennessee Family Law § 3-6 (2d ed. 2004). Therefore, we conclude that a valid marriage is a foundational threshold to any analysis regarding the equitable division of marital property.

It appears from our research that there is but one case from this state that directly addresses the consequences of property being transferred or acquired during a bigamous marriage and the interest in that property of the parties to the marriage. *Arms v. Stanton*, 43 S.W.3d 510 (Tenn. Ct. App. 2000). In *Arms*, this Court was faced with a somewhat similar situation as the one presently before this Court. *Id.* In that case, Mr. Arms entered into a bigamous marriage with Tammy Lou Arms while he was still married to one Ms. McCord. *Id.* at 511. During his "marriage" to Tammy Lou, Mr. Arms purchased real property in Tennessee and subsequently conveyed by quitclaim deed all of his interest in the real property to Tammy Lou.

[1](...continued)
had remarried prior to the finalization of the California divorce. *Id.* at \*6.

*Id.* Several years later, Tammy Lou filed for divorce, and, during the pendency of the divorce, conveyed the property to one Mr. Stanton for $ 50,000.00. *Id.* After Mr. Arms learned of the transaction, he brought a third-party action against Mr. Stanton, claiming a marital interest in the real property and seeking fifty percent (50%) of the fair market value of the real property. *Id.* On appeal, this Court held that Mr. Arms could not claim a "marital interest" in the property because the parties were not legally married and, without a valid marriage, the real property could not be considered "marital" property. *Id.* at 513.

. . .

Therefore, in light of the foregoing authorities, we conclude that where the marriage is void from its inception, as in this case, Mrs. Falk may not rely on the doctrine of marital property to claim an interest in property titled in Mr. Falk's name. *Arms*, 43 S.W.3d at 513. Thus, we conclude that it was error for the trial court to have made an equitable division of the parties' "marital" property.

*Id.* We went on to state:

Because the parties were not validly married, the rules of equitable distribution in the context of section 36-4-121 do not apply. Instead, the parties should be restored, insofar as it is possible, to the positions they held prior to the invalid marriage. Property titled in each party's individual name should be granted to the titled party. However, with regard to jointly owned property, should the trial court find joint title to certain property or be unable to determine how the property is titled, the court should make an equitable division of the parties' respective rights in such property, without resort to the factors applicable to "marital property."

*Id.* at 23.

As we have already determined that the parties' marriage was valid, and not void from its inception, we find *Falk* to be inapplicable to the case at bar. We find that the trial court erred in applying the standards for property division as elicited in *Falk* in its order of property division between Mr. and Ms. Hankins. Accordingly, we reverse the judgment of the trial court as to division of property,[2] and we remand to the trial court for further proceedings as to the parties' respective claims for divorce, to the extent necessary, as well as further proceedings regarding distribution of the parties' property according to martial property equitable distribution principles, utilizing the factors set forth at Tenn. Code Ann. § 36-4-121.

---

[2] To the extent that this order dealt with the final allocation of funds awarded for the support of Ms. Hankins throughout the proceedings, we affirm those aspects of the January 27, 2006 order, as explained in the next section.

### C. Pendente Lite Support

Finally, Mr. Hankins alleges error with the trial court's award of *pendente lite* support to Ms. Hankins, or otherwise on her behalf, throughout the proceedings. After Ms. Hankins filed for divorce in December of 2003, the parties consented to an order on temporary support by which Mr. Hankins agreed to pay Ms. Hankins $4,000 per month during the pendency of the litigation. Mr. Hankins also agreed to maintain health, life, and automobile insurance on Appellant's behalf during this period. The court also awarded Ms. Hankins additional funds for the payment of her pretrial expenses. Appellee's sole argument against these awards is that Ms. Hankins was not entitled to alimony because the marriage was found to have been invalid. Mr. Hankins correctly cites *Falk*, 2005 Tenn. App. LEXIS 34, at *18-19, for this Court's acknowledgment of our Supreme Court's holding in *Pewitt v. Pewitt*, 240 S.W.2d 521, 526 (Tenn. 1951), that "an alimony obligation cannot be based upon a void marriage because any right to alimony is premised first on the duty of support that arises from the marital relation."

In its January 27, 2006, order on division of assets, the trial court ruled in relevant part:

6.   Defendant is not entitled to a judgment awarding reimbursement of any funds expended on behalf of Plaintiff including but not limited to attorney fees, pendente lite alimony, litigation expenses, or other funds the Court ordered him to pay to Plaintiff or for Plaintiff's benefit.

7.   Defendant is not awarded reimbursement for the Twenty Thousand Dollard ($20,000.00) Plaintiff withdrew from the Union Planter's Bank Account ending 4223.

. . .

9.   The Accounting provided by Stuart Breakstone, Attorney for Plaintiff, is acceptable to the Court as an accurate representation of the Pre-Trial Expenses awarded to Plaintiff and the expenses paid out of same.

10.  The remaining Pre-Trial Expenses' balance of Nineteen Thousand One Hundred Thirty-Eight Dollars and Thirty Cents ($19,138.30) shall be reimbursed to Defendant.

11.  Defendant shall be responsible for any outstanding Court Costs.

In *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006), our Supreme Court provided the following standard of review to be utilized by an appellate court when examining a trial court's award of alimony:

> Trial courts have broad discretion in awarding spousal support. ***Bratton v. Bratton***, 136 S.W.3d 595, 605 (Tenn. 2004). "Accordingly, '[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.'" ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting ***Kinard v. Kinard***, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. ***Id.*** at 733. Thus, this Court gives awards of alimony an abuse of discretion review. *See* ***Bratton***, 136 S.W.3d at 605.

Because the Baker divorce decree was not subject to collateral attack in this case, the parties' marriage was valid. Mr. Hankins has failed to otherwise allege or submit proof that the trial court abused its discretion in its award of alimony to Ms. Hankins during the divorce proceedings below. Therefore, we find Appellee's argument on this issue to be without merit, and the alimony award as defined by the trial court in its order on January 27, 2006, is affirmed.

The remaining issues offered by the parties for our consideration are hereby pretermitted.

## V. Conclusion

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. Costs are assessed against Appellee, James Michael Hankins, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-13-